No. 24-2034

IN THE
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

———————————————

THE ESTATE OF PAUL BROWNING, EX REL. BETTY BROWNING,
ADMINISTRATOR OF THE ESTATE OF PAUL BROWNING,

*Plaintiff-Appellant,*

*v.*

LAS VEGAS METROPOLITAN POLICE DEPARTMENT, ET AL.

*Defendants-Appellees.*

———————————————

Appeal from the United States District Court
for the District of Nevada, Las Vegas
No. 2:20-CV-01381-KJD-MDC

---

## PLAINTIFF-APPELLANT'S REPLY BRIEF

---

David B. Owens
CIVIL RIGHTS AND JUSTICE CLINIC
UNIVERSITY OF WASHINGTON LAW SCHOOL
William H. Gates Hall, Ste. 265
P.O. Box 85110
Seattle, WA 98145
O: 312-243-5900
david@loevy.com
*Counsel for Plaintiff-Appellant*

Elizabeth Wang
LOEVY & LOEVY
2060 Broadway, Ste. 460
Boulder, CO 80302
O: 720-328-5642
elizabethw@loevy.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................iii

SUMMARY OF THE ARGUMENT ......................................................... 1

ARGUMENT ...................................................................................... 3

    I.    The Ghostwritten Decision Must Be Reversed ........................... 3

    II.    Browning's Testimony Is Admissible, And Regardless, There Is Admissible Evidence Of His Innocence .................................. 4

    III.    Preclusion Or Not, Plaintiff's Brady Claim Must Proceed To Trial .................................................................................... 8

        A.    Defendants Ignore This Court's Prior Findings ................. 8

        B.    A Reasonable Jury Could Find that Defendants Suppressed Material, Favorable Evidence with Deliberate Indifference to or Reckless Disregard for Browning's Rights or the Truth ........................................ 9

            1.    Hugo Elsen's description of the perpetrator's hair was suppressed and material ...................................... 10

            2.    A reasonable jury can easily find the bloody shoeprints belonged to the perpetrator and that their origin was suppressed and material .................. 15

            3.    A reasonable jury can find Defendants' knowledge of the Wolfes' unreliability was suppressed and material ..................................................................... 18

            4.    Defendants' efforts to blame Browning's defense counsel contradict established law .............................. 19

    IV.    Plaintiff's Fabrication Claim Must Proceed To Trial ................ 20

V.      Plaintiff's Unreliable Identification Claim Must Proceed To Trial ................................................................................22

        A.      Defendants Cannot Cure Forfeiture of This Issue...........22

        B.      Defendants' Belated Arguments Construe the (Partial) Record against Plaintiff ................................................24

VI.     Plaintiff's Fourth Amendment And Analogous State Constitutional Claim Must Proceed To Trial ...........................26

VII.    Plaintiff's Failure To Intervene Claim Must Proceed To Trial ................................................................................30

VIII.   Plaintiff's Federal Conspiracy Claim Must Proceed To Trial ................................................................................31

IX.     Plaintiff's *Monell* Claim Must Proceed To Trial ......................33

X.      Plaintiff's Other State Law Claims Must Proceed To Trial .....34

CONCLUSION ................................................................................35

ii

# TABLE OF AUTHORITIES

## Cases

*Amado v. Gonzalez*, 758 F.3d 1119 (9th Cir. 2014)........................... 10, 20

*Baldwin v. Placer Cnty.*, 418 F.3d 966 (9th Cir. 2005) ........................... 31

*Banks v. Dretke*, 540 U.S. 668 (2004)........................................................ 19

*Bracy v. Gramley*, 520 U.S. 899 (1997) ................................................... 19

*Brady v. Maryland*, 373 U.S. 83 (1963) ............................................ passim

*Browning v. Baker*, 875 F.3d 444 (9th Cir. 2017) ........................... passim

*Caldwell v. City & Cnty. of San Francisco*,
    889 F.3d 1105 (9th Cir. 2018) .................................................. 21, 29

*Cameron v. Brown*, 721 F. App'x 612 (9th Cir. 2017) ............................. 29

*Cameron v. Craig*, 713 F.3d 1012 (9th Cir. 2013) .................................. 31

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ................................... 22, 23

*Benavidez v. Cnty. of San Diego*, 993 F.3d 1134 (9th Cir. 2021) .......... 15

*Chiaverini v. City of Napoleon, Ohio*, 602 U.S. 556 (2024) ........ 27, 28, 29

*Clem v. Lomeli*, 566 F.3d 1177 (9th Cir. 2009) ....................................... 22

*Costanich v. Dep't of Social & Health Servs.*,
    627 F.3d 1101 (9th Cir. 2010) ........................................................ 21

*Cunningham v. Gates*, 229 F.3d 1271 (9th Cir. 2003) ............................ 30

*Deorle v. Rutherford*, 272 F.3d 1272 (9th Cir. 2001) ............................. 32

*Devereaux v. Abbey,* 263 F.3d 1070 (9th Cir. 2001) ............................... 21

*Dirks v. Martinez*, 414 F. App'x 961 (9th Cir. 2011).............................. 31

*Eberle v. City of Anaheim*, 901 F.2d 814, 818 (9th Cir. 1990) ............... 24

*Estate of Tucker ex rel. Tucker v. Interscope Records*, Inc.,
   515 F.3d 1019 (9th Cir. 2008) ...................................................... 28

*Giglio v. United States*, 405 U.S. 150 (1972) ............................................. 9

*Gilbrook v. City of Westminster*, 177 F.3d 839 (9th Cir. 1999) ............. 31

*Graham v. Connor*, 490 U.S. 386 (1989) .................................................. 28

*Graves v. Arpaio*, 623 F.3d 1043 (9th Cir. 2010) .................................... 23

*Harris v. Roderick*, 126 F.3d 1189 (9th Cir. 1997) ................................. 31

*Hope v. Pelzer*, 536 U.S. 730 (2002) ......................................................... 32

*Liston v. Cnty. of Riverside*, 120 F.3d 965 (9th Cir. 1997) ..................... 15

*Lobato v. LVMPD*, 2023 WL 6620306 (9th Cir. 2023) ........................... 33

*Long v. Weeks*, 2024 WL 1672258 (9th Cir. Apr. 18, 2024) .................... 33

*Malley v. Briggs*, 475 U.S. 335 (1986) ..................................................... 29

*Manson v. Braithwaite*, 432 U.S. 98 (1977) ............................................ 24

*Manuel v. City of Joliet*, 580 U.S. 357 (2017) .................................... 28, 29

*Mellen v. Winn*, 900 F.3d 1085 (9th Cir. 2018) ...................... 9, 10, 15, 19

*Milstein v. Cooley*, 257 F.3d 1004 (9th Cir. 2001) .................................. 29

*Monell v. Dep't of Soc. Servs. of City of New York*,
   436 U.S. 658 (1978) ............................................................... 32, 33

*Monroe v. Pape*, 365 U.S. 167 (1961) ...................................................... 29

*N. Stevedoring & Handling Corp. v. Int'l Longshoremen's
   & Warehousemen's Union, Loc. No. 60*,
   685 F.2d 344 (9th Cir. 1982) ............................................................ 4

*Neil v. Biggers*, 409 U.S. 188 (1972) ........................................................ 24

*Olivier v. Baca*, 913 F.3d 852 (9th Cir. 2019) ......................................... 22

*Paradis v. Arave*, 240 F.3d 1169 (9th Cir. 2001) .................................... 20

*Photo Elecs. Corp. v. England*, 581 F.2d 772 (9th Cir. 1978) ................... 3

*Richards v. Cnty. of San Bernardino*, 39 F.4th 562 (9th Cir. 2022) ....... 21

*Sabbe v. Washington Cnty. Bd. of Commissioners*,
    84 F.4th 807 (9th Cir. 2023) ............................................................. 29

*Spencer v. Peters*, 857 F.3d 789 (9th Cir. 2017) .................................... 21

*Staub v. Proctor Hosp.*, 562 U.S. 411 (2011) ........................................ 29

*Stovall v. Denno*, 388 U.S. 293 (1967) .................................................. 25

*Thompson v. Clark*, 142 S. Ct. 1332 (2022) ........................................... 28

*Tolan v. Cotton*, 572 U.S. 650 (2014) ...................................................... 5

*U.S. ex. rel. Meyer v. Horizon Health Corp.*,
    565 F.3d 1195 (9th Cir. 2009) ........................................................... 23

*United States v. Bagley*, 473 U.S. 667, 676 (1985) ................................ 19

*United States v. Beck*, 418 F.3d 1008 (9th Cir. 2005) ............................ 25

*United States v. Dreyer*, 804 F.3d 1266 (9th Cir. 2015) ........................ 22

*United States v. Geiger*, 263 F.3d 1034 (9th Cir. 2001) ........................... 7

*United States v. McFall*, 558 F.3d 951 (9th Cir. 2009) ............................ 7

*United States v. Poland*, 659 F.2d 884 (9th Cir. 1981) ............................ 7

*United States v. Salerno*, 505 U.S. 317 (1992) ........................................ 7

*United States v. Wade*, 388 U.S. 218 (1967) .......................................... 24

*Vucinich v. Paine, Webber, Jackson & Curtis, Inc.*,
    739 F.2d 1434 (9th Cir. 1984) ........................................................... 28

*Vuitton Et Fils S.A. v. J. Young Enterprises*, Inc.,
    644 F.2d 769 (9th Cir. 1981) ............................................................... 3

*Wearry v. Cain*, 577 U.S. 385 (2016) ........................................................ 10

*Whren v. United States*, 517 U.S. 806 (1996) ........................................ 28

*Wyler Summit P'ship v. Turner Broad. Sys., Inc.*,
    235 F.3d 1184 (9th Cir. 2000) ......................................................... 4

*Ziglar v. Abbasi,* 582 U.S. 120 (2017) ................................................. 32, 33

## Other Authorities

FED. R. EVID. 804 .............................................................................. 6

FED. R. EVID. 807 .............................................................................. 6

## SUMMARY OF THE ARGUMENT

The Answering Brief (AB) confirms summary judgment should have never been entered in this case. Doing so was a manifest injustice.

Though Defendants seek to justify a patently unfair order they themselves wrote, their brief confirms they have forfeited issues that should accordingly proceed to trial. Defendants did not move for summary judgment on Plaintiff's unduly suggestive identification claim, and so the response below did not provide a fulsome discussion of that issue. It was incorrect for Defendants to pretend—and to ghostwrite— forfeiture did not occur. Similarly, Plaintiff outlined six fabrication theories below, 2-ER-247-48, and again in the Opening Brief (OB). OB59-60. Defendants meaningfully addressed one of six below, 5-ER-857, and zero of six before this Court, AB44-45, doubly forfeiting the issue.

As to issues addressed in Defendants' motion below, the Answering Brief construes facts in the light most favorable to Defendants, rather in Plaintiff's favor. For example, in relation to Plaintiff's claim under *Brady v. Maryland*, 373 U.S. 83 (1963), Defendants refuse to accept Browning is innocent; that a reasonable jury could find evidence was suppressed;

1

and that a reasonable jury could find the suppressed evidence material. These tactics run contrary to Rule 56.

These tactics also run contrary this Court's prior determination in *Browning v. Baker*, 875 F.3d 444, 450 (9th Cir. 2017), that *Brady* was violated. Regardless of whether preclusion applies, an adjudicated *Brady* violation necessarily means judgment as a matter of law cannot be entered in Defendants' favor here on the basis that the evidence was not suppressed (after this Court found it was suppressed) or that the suppressed evidence was immaterial (after this Court found it was material). At minimum, material disputes of fact preclude summary judgment on these issues. The remaining issue for civil liability unaddressed in *Browning* —Defendants' *mens rea*—is not amenable to summary judgment either.

Nor does the law countenance Defendants obtaining an unfair windfall via the exclusion of Paul Browning's testimony simply because he died. Unavailable witnesses exist and the Federal Rules permit the admission of sworn (and even unsworn) statements to ensure cases are fairly resolved on their merits. Nonetheless, Defendants ghostwrote below that the arguments they made for the first time in reply preclude

2

consideration of Browning's prior testimony. They are mistaken. In fact, the Answering Brief has now waived one of the arguments made for admission of this evidence set forth in the Opening Brief. The evidence is properly considered both now and at trial on remand.

Respectfully, reversal and remand to a new judicial officer is appropriate in this case.

## ARGUMENT

### I. The Ghostwritten Decision Must Be Reversed

Though they wrote an unfair order, Defendants do not now defend the procedure of wholesale adoption of their ghostwritten order, which has been condemned repeatedly by this Court. *See, e.g.*, *Vuitton Et Fils S.A. v. J. Young Enterprises*, Inc., 644 F.2d 769, 778 (9th Cir. 1981). Part of the reason is the "possibility that there was insufficient independent evaluation of the evidence" meaning the losing party's position may not have been given due consideration. *Photo Elecs. Corp. v. England*, 581 F.2d 772, 777 (9th Cir. 1978).

Here, it is no mere possibility that Plaintiff's position—which must be credited at summary judgment—was given inadequate consideration; it is a certainty. Defendants took great liberties in proposing an order

that adversely adjudicated every single issue, including issues that were not part of their motion for summary judgment. In addition, the ghostwritten order "is flatly wrong in proclaiming that the key issue in dispute was actually 'undisputed.'" *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 235 F.3d 1184, 1196 (9th Cir. 2000).

This was error and it was fundamentally unfair. "Wholesale adoption of one side's proposed findings of fact and conclusions of law invites reversal." *N. Stevedoring & Handling Corp. v. Int'l Longshoremen's & Warehousemen's Union, Loc. No. 60*, 685 F.2d 344, 350 (9th Cir. 1982). The order must be reversed, and, because the appearance of justice cannot be maintained with a court presiding over a trial where it has already declared one side the winner regardless of the opponent's evidence, a different jurist should be assigned on remand.

## II. Browning's Testimony Is Admissible, And Regardless, There Is Admissible Evidence Of His Innocence

As discussed in the opening brief, Browning has sworn to his innocence in an affidavit, and in testimony from the habeas evidentiary hearing. 2-ER-282-86; 10-ER-2020-2103. However, this is not the only evidence that would permit a reasonable jury to find that Browning is innocent (and that Defendants knew he was innocent). First, a jury could

accept the evidence about "Willy," including testimony from Frederick Ross about seeing Randy Wolfe hurrying away from the jewelry store with a Cuban man with shoulder-length, processed, curly hair wearing a blue hat and tan jacket who was holding a paper bag and saying he thought he "hurt the guy." 9-ER-1960; *see generally* 9-ER-1951-1965. Second, Browning's shoes could not have been the bloody shoeprints that were left by the perpetrator. Third, Browning could not have been the perpetrator because, as Branon knew, Browning had an afro, not wet-looking, loosely-curled hair. And, the only "evidence" ever generated against Browning was tainted, fabricated, or flawed.

In other words, while Browning's sworn statements can be considered at summary judgment, even if they are excluded, Plaintiff can prove that Browning is innocent through other evidence. Either way, the fact of Browning's innocence—and the inferences that flow from it—must be accepted at this juncture. *Tolan v. Cotton,* 572 U.S. 650, 656 (2014).

Defendants forfeited the argument that Browning's account should not be considered because they failed to raise this evidentiary issue in their motion for summary judgment (and instead raised it only for the

5

first time in reply). OB33-34. Defendants have not responded to this forfeiture argument. Thus, it is conceded.

Regardless, Browning's prior testimony from the evidentiary hearing is admissible under Federal Rules of Evidence 804(b)(1) and 807(a), and his affidavit is admissible under Rule 807(a).

Defendants do not meaningfully address Rule 807(a)—which is meant to prevent unfair results like the ones Defendants seek here—or the copious citations Plaintiff provided. *See* Fed. R. Evid. 807(a); OB35-38 (collecting authorities). As to the prior testimony, Defendants fail to respond at all. AB34-37. As to the affidavit, Defendants loosely discuss Rules 56 and 804, but fail to address Rule 807(a). AB32-33. Thus, this argument has been conceded or waived.

With respect to Browning's prior testimony, Defendants' only response is that the State of Nevada did not have a "similar motive to develop testimony by direct, cross- or redirect examination," FED. R. EVID. 804(b)(1), because it "only had motive to refute testimony bearing on the ineffective assistance of counsel claims at issue in the Habeas petition." AB35. This is not true, and Defendants do not provide any explanation or citations. Clearly, the State of Nevada intensely litigated the *Brady*

6

issues raised by Browning in his habeas petition—the very same *Brady* issues (concerning the bloody shoeprints and the hairstyle identification provided by Hugo Elsen) that Plaintiff raises here. These same issues were fully litigated and the State had a "similar motive" to develop testimony on the *Brady* issues by cross-examination. The motive to attack Browning's credibility was the same. In any event, "'similar motive' does not mean 'identical motive.'" *United States v. Salerno*, 505 U.S. 317, 326 (1992) (Blackmun, J., concurring). Simply because Browning raised other issues in his *habeas* petition not at issue here does not mean the State of Nevada lacked a similar motive to cross-examine him on the identical *Brady* issues raised in this lawsuit. Here, as in *United States v. Geiger*, 263 F.3d 1034 (9th Cir. 2001), *United States v. McFall*, 558 F.3d 951 (9th Cir. 2009), *United States v. Poland*, 659 F.2d 884 (9th Cir. 1981), the legal and factual issues are "virtually the same." *Geiger*, 263 F.3d at 1038. The one arguably new issue—Defendants' *mens rea* required for civil liability—is not something Browning could have testified about anyway. Defendants do not persuasively distinguish these authorities.

### III. Preclusion Or Not, Plaintiff's *Brady* Claim Must Proceed To Trial

#### A. Defendants Ignore This Court's Prior Findings

This Court's prior decision found a *Brady* violation due to the suppression of exculpatory information related to the bloody shoeprints and the description of the perpetrator's hair having come from Elsen. Particularly in this posture, Defendants should not be permitted to challenge this Court's findings that: (1) information regarding the bloody shoeprints—known to Branon, Radcliffe, Horn, Bunker, and Leonard— was exculpatory, material, and suppressed; (2) information regarding Hugo Elsen's description of the killer's hair—known to Branon—was exculpatory, material, and suppressed; (3) relevant to materiality, "the evidence at trial was remarkably weak," including because the case "relied on flawed identifications and the Wolfes' unreliable testimony"; and (4) the misidentifications of Browning were flawed and unreliable. *Browning*, 875 F.3d at 461, 463-67.

These findings should have been binding or at least persuasive. Defendants argue that Plaintiff must show a *mens rea* component unique to § 1983 liability. That is true, but it would not touch the underlying *issues* that should be precluded (suppression and materiality). The

question for present purposes should be limited to asking whether there is sufficient evidence to allow a reasonable jury to find the requisite m*ens rea* for liability in the suppression of material evidence (not whether the evidence was suppressed or material).

In any event, Plaintiff does not need preclusion in order to prevail in this appeal. At minimum, this Court's prior decision shows that a reasonable jury could find in Plaintiff's favor on her *Brady* claim. As discussed in Plaintiff's Opening Brief and below, there is plentiful evidence that Defendants acted with deliberate indifference to or reckless disregard for Browning's rights or the truth in withholding evidence. *See Mellen v. Winn*, 900 F.3d 1085, 1096 (9th Cir. 2018). Defendants' arguments otherwise ignore the evidence, and impermissibly construe the record in their favor.

## B. A Reasonable Jury Could Find that Defendants Suppressed Material, Favorable Evidence with Deliberate Indifference to or Reckless Disregard for Browning's Rights or the Truth

The Due Process Clause requires police to affirmatively produce material information—*i.e.,* exculpatory and impeachment information—to the accused. *Brady*, 373 U.S. at 87; *Giglio v. United States*, 405 U.S. 150, 153-55 (1972). Under established law, police officers "cannot satisfy

9

[their] *Brady* obligation to disclose exculpatory evidence by making some evidence available and claiming the rest would be cumulative" but are instead "obligated to disclose *all* material information casting a shadow on a government witness's credibility." *Mellen*, 900 F.3d at 1097-98 (internal quotation marks and citation omitted). *Brady* is not "excused by a defense counsel's failure to exercise diligence with respect to suppressed evidence." *Amado v. Gonzalez*, 758 F.3d 1119, 1136 (9th Cir. 2014). When multiple pieces of information are suppressed, materiality must be considered cumulatively. *See Wearry v. Cain*, 577 U.S. 385, 394, 136 (2016). The trier of fact "must imagine that every piece of suppressed evidence had been disclosed, and then ask whether, assuming those disclosures, there is a reasonable probability that the jury would have reached a different result." *Browning*, 875 F.3d at 464.

In addition to contravening summary judgment standards, Defendants' arguments cannot be squared with established authorities.

### 1. Hugo Elsen's description of the perpetrator's hair was suppressed and material

Hugo Elsen himself gave Branon a description of the perpetrator as having "shoulder length," "loosely curled," and "wet" hair, which Branon knew could not have been Browning. Branon knew that Elsen did not use

the phrase "Jheri curl." 5-ER-943; 12-ER-2661. Despite this knowledge, Branon did not write in his report that it was Hugo Elsen who gave the description of the suspect, or that Hugo said the hair was shoulder-length, wet-looking, and loosely-curled. 5-ER-945; 6-ER-1034. Branon's report lumped in three witnesses (Hugo, Josey Elsen, and Debra Coe) into his description (*see* 6-ER-1034). Thus, Defendants' assertion that "[t]he Jheri curl evidence was included in Ofc. Branon's Report," is false. AB40. It is not even clear what Defendants mean by this statement. It is not even disputable that the words Branon chose to use in the report were not the words that Hugo Elsen used to describe the perpetrator (shoulder-length, loosely-curled, and wet).

Defendants' assertion that "the source of the information "was easily discernable" is also false. *Id.*. It is not at all "discernable" that Hugo Elsen was the source of this description, *see* 6-ER-1034; the report reads as if it was really Coe who was able to make the "partial suspect description," not Hugo. A reasonable jury could decide these factual issues in Plaintiff's favor (just as this Court did in deciding Browning's habeas).

11

A reasonable jury could find that Hugo Elsen's description of the hair was both exculpatory and material—after all, this Court found both in granting Browning's habeas petition. *Browning*, 875 F.3d at 463, 466-67. Defendants' assertion that "[a] fair-minded jury could easily reject the evidence (as the criminal jury did in this case)" reflects their failure to apply the correct standard at summary judgment—which is what a reasonable jury in this case could decide. AB41. It also fails to appreciate the fact that the criminal jury in Browning's case *did not have Hugo Elsen's description of the perpetrator's hair*—this information was suppressed, as Branon himself admitted at the evidentiary hearing (and in his deposition in this case).

Defendants assert that in finding a *Brady* violation in the habeas case, "this Court did not fault Ofc. Branon or attribute the violation to him," but instead blamed the prosecutor for making an improper argument during closing argument. AB41. This assertion is wrong for several reasons. First, in a habeas case, courts do not usually examine whether it is the police or prosecutor who failed to disclose or suppressed exculpatory evidence—it is a due process violation regardless of the source, because the police's knowledge is imputed to the prosecutor. *See*

12

*Browning*, 875 F.3d at 460 ("For claims under *Brady*, the prosecutor's personal knowledge does not define the limits of constitutional liability. *Brady* imposes a duty on prosecutors to learn of material exculpatory and impeachment evidence in the possession of state agents, such as police officers."). Thus, it would not be surprising if this Court did not identify whether it was police or the prosecutor who withheld the exculpatory evidence.

Second, this Court did identify the source of the suppression of the hair evidence—it was Branon. The Court pointed out that at trial, "Branon testified that he received a description of the suspect at the scene as sporting a 'shoulder length J[h]eri-type curl,'" and "[a]t closing the prosecution argued that whoever gave this description to Branon did not know the difference between a Jheri curl and an Afro. *But during the state habeas hearing, Branon testified that the description he was given did not actually include the words 'Jheri Curl.'* Rather, Hugo told him that the assailant's hair was 'shoulder length,' 'loosely curled,' and 'wet.'" *Browning*, 875 F.3d at 463 (emphasis added). This Court continued:

13

> Neither "Jheri Curl" nor "shoulder length," "loosely curled,"
> and "wet" are descriptions of an Afro. But only "Jheri Curl" is
> susceptible to the argument that the speaker could have seen
> an Afro and used the wrong term because he was unfamiliar
> with African American hairstyles. Had the prosecution
> disclosed before trial that victim Hugo Elsen's description of
> his assailant's hair was not a "shoulder length J[h]eri-type
> curl," but "shoulder length," "loosely curled," and "wet,"
> Browning could have easily refuted the prosecution's
> argument. This makes the exact words Hugo used to describe
> his assailant evidence favorable to the defense under *Brady*.

*Id.* As a reasonable jury could still find, this Court found it was *Branon*

who withheld this favorable evidence—he was the one who obtained the

hair description from Hugo Elsen and chose not to put it in his report.

Moreover, the trial prosecutor, Dan Seaton, testified at the

evidentiary hearing that he had an open file policy and would have

produced exculpatory information he had. 12-ER-2623-24. The fact that

the prosecutor did not disclose it permits a jury to conclude the police did

not give him the information.

A reasonable jury could also decide that Branon acted with

deliberate indifference to or reckless disregard of Browning's rights in

suppressing this evidence. That Branon's interpretive gloss on the hair

description made it into his report does not satisfy his constitutional

obligations. The "government cannot satisfy its *Brady* obligation to

14

disclose exculpatory evidence by making some evidence available and claiming the rest would be cumulative"; the "'government is obligated to disclose *all* material information casting a shadow on a government witness's credibility.'" *Mellen*, 900 F.3d at 1097-98. Branon was required to disclose the specific hair description and its source—Hugo Elsen.

Defendants have not responded to Plaintiff's argument that the incomplete report is part of the reason why a reasonable jury could find the *Brady* violation was reckless or deliberately indifferent. That report failed to mention the actual description and its (crucial) source, a glaring omission that misleads more than it discloses (and that separately shows Plaintiff has a claim for fabrication). *Cf. Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1147 (9th Cir. 2021); *Liston v. Cnty. of Riverside*, 120 F.3d 965, 973 (9th Cir. 1997). In sum, Branon's mental state is for the jury.

### 2. A reasonable jury can easily find the bloody shoeprints belonged to the perpetrator and that their origin was suppressed and material

The bloody shoeprints were there when the first-arriving officers arrived, countering the suggestion they were not the perpetrator's. 12-ER-1650; 7-ER-1315, 1319; 3-ER-388, 390-97, 403, 408-09, 412, 424, 443-46; 5-ER-941. Both Horn and Branon knew the shoeprints belonged to

15

the perpetrator because they led from the Elsen's body to the front door. *See* 6-ER-1228 (Horn report stating, "These footwear patterns started from the Northeast corner of the store leading towards the front door which faces to the East. The Northeast corner of the store is where Hugo Elsen was found."); 7-ER-1380 (Horn testimony); 5-ER-937 (Branon Deposition, pp.18, 21); 6-ER-1289 (scene diagram). A reasonable jury could also look at the crime scene photos and conclude that the shoeprints led from the body to the door. 3-ER-426-27, 430, 433.

Moreover, the shoeprints were not made by Josy Elsen or Debra Coe. 5-ER-937-938 (Branon Deposition, pp. 21-22); 5-ER-1002 (Horn Deposition, pp. 44-45); 3-ER-471-473 (bloody shoeprints were larger than Josy's shoe size). Defendants also knew the shoeprints were not made by Browning. 5-ER-937, 939, 949, 1000, 1002-03; 6-ER-1196, 1230; 7-ER-1381; 11-ER-2333-34, 2336-37; 12-ER-2650.

Branon, Horn and Radcliffe knew that the bloody shoeprints were important but did not document them. 12-ER-2665; 5-ER-937-39, 972-73; 6-ER-1034-36, and they did not document the fact that they knew the shoeprints could not have been made by the paramedics who arrived later. 12-ER-2666-67; 5-ER-937, 1002-03. Branon and Horn discussed the

16

fact the shoeprints were present when they arrived with detectives (including Bunker and Leonard). 5-ER-911, 939; 6-ER-1035, 1040, 1058; 12-ER-2665.

None of the Defendants documented this important information in any report or disclosed it to the prosecution or the defense. *Browning*, 875 F.3d at 461; 6-ER-1016-1311; 5-ER-993 (pp. 7-8).

Impermissibly at summary judgment, Defendants ignore this evidence and assert their version of the facts. *Compare* OB17-18 *with* AB42-43. Defendants' assertion that "[t]he actual source of the shoeprints has never been determined and, therefore, has never been established as conclusively exculpatory" likewise contradicts the summary judgment standard. The question is whether a reasonable jury in this case could find that the bloody shoeprints belonged to the perpetrator (and not Browning), the Defendants knew it, and deliberately or recklessly suppressed this favorable information. The answer to all those questions is yes. *Cf. Browning*, 875 F.3d at 461, 463, 465. Additionally, given the evidence outlined above (which Defendants do not address), a reasonable jury could conclude that Defendants suppressed

17

this evidence with deliberate indifference to or reckless disregard for Plaintiff's rights or the truth.

Defendants (Branon, Horn, Radcliffe, Leonard, and Bunker) collectively discussed the bloody shoeprints issues the day it happened. They were all on scene very early and part of the shoeprint discussion. A reasonable jury could easily conclude that Leonard, a lead detective, knew about the exculpatory evidence and suppressed it, amounting to indifference. A reasonable jury could also conclude that Radcliffe wrote misleading reports in a way to obscure and mislead, a fact he withheld. Defendants ignore the evidence on Branon and Horn and do not address Plaintiff's arguments on Radcliffe, Leonard, or Bunker's liability for suppressing the shoeprint evidence. *See* AB43-44. That is forfeiture.

### 3. A reasonable jury can find Defendants' knowledge of the Wolfes' unreliability was suppressed and material

Defendants knew about the Wolfes' unreliability and tried to vouch for their incredible story falsely implicating Browning. OB8-11. Specifically, Radcliffe wrote an arrest affidavit for Browning based on the Wolfes' obviously unreliable account. 5-ER-979. Defendants do not address Plaintiff's argument that the "information" provided by the Wolfes would have been clearly unreliable to any reasonably trained

18

officer. *Compare* AB44-45 *with* OB9-10, 43-44, 59-60. Nor do Defendants address the evidence cited by Plaintiff that Radcliffe made false assertions in the affidavit. *See* OB10-11. Again, this is forfeiture.[1]

### 4. Defendants' efforts to blame Browning's defense counsel contradict established law

Defendants argue that there was no due process violation because Browning's counsel should have tried harder to learn of the suppressed evidence including by asking the officers about the suppressed material at trial. AB40, 42-43.

As Plaintiff explained, this analysis turns the law upside down— *Brady* disclosures must be made *before* trial and there is no requirement for defense to scavenge to try to find what the police are hiding. *See* OB50-51 (citing, among other authorities, *Banks v. Dretke*, 540 U.S. 668, 695 (2004); *Bracy v. Gramley*, 520 U.S. 899, 908 (1997); *United States v. Bagley*, 473 U.S. 667, 676, 682 (1985), *Mellen*, 900 F.3d at 1097-98,

---

[1] Defendants have not responded to Plaintiff's argument that they suppressed their own misconduct in fabricating evidence and material omissions in their reports that bolstered their fabrications. Nor have they responded to Plaintiff's argument that they suppressed the full extent of the tactics taken to obtain misidentifications of Browning that were introduced at the criminal trial. *See* OB43. Thus, these arguments have been forfeited.

*Amado v. Gonzalez*, 758 F.3d 1119, 1136 (9th Cir. 2014), and *Paradis v. Arave*, 240 F.3d 1169, 1176 (9th Cir. 2001)). Defendants have not responded to this argument or Plaintiff's authorities. *See* AB40, 42-43.

## IV.   Plaintiff's Fabrication Claim Must Proceed To Trial

In the district court, Plaintiff pointed out that her fabrication claim involved six things: (1) the arrest warrant affidavit (authored by Radcliffe); (2) documents purporting to say the Wolfes were reliable informants; (3) documents claiming that Betty Browning made inculpatory statements about Paul Browning; (4) Branon's police report concerning the description of the perpetrator; (5) reports by Bunker and Radcliffe claiming Browning was unclothed at arrest; and (6) reports concerning the bloody shoeprints (including from Horn). 2-ER-170.

Defendants addressed only one of six below—the Radcliffe report about the Wolfes credibility. 5-ER-857. Defendants forfeited the other five issues. Summary judgment should not have been granted given the forfeiture, but Defendants ghostwrote it into the opinion anyway.

On appeal, Defendants forfeited all six categories of fabricated evidence. After setting out the operative legal standards for a fabrication, OB57-59, Plaintiff reiterated the same six categories of fabrication

20

alleged here, OB59, and pointed out that Defendants one of six categories identified below. *Id.*

In their Answering Brief, Defendants mention the fact that Plaintiff contends the Radcliffe report is part of the fabrication of evidence claim, AB3, 38, but present zero argument for why they have not forfeited the other five categories of fabricated evidence, and they do not even address the Radcliffe report about the Wolfes. Nowhere in Defendants' brief do they set out the operative legal standards pertaining to the fabrication of evidence that govern in this Circuit, *see, e.g.*, *Devereaux v. Abbey,* 263 F.3d 1070, 1075 (9th Cir. 2001) (en banc), *Richards v. Cnty. of San Bernardino*, 39 F.4th 562, 571 (9th Cir. 2022), *Spencer v. Peters*, 857 F.3d 789, 793 (9th Cir. 2017), *Costanich v. Dep't of Social & Health Servs.*, 627 F.3d 1101, 1112 (9th Cir. 2010), *Caldwell v. City & Cnty. of San Francisco*, 889 F.3d 1105, 1112 (9th Cir. 2018). Nowhere in their brief do Defendants offer any substantive discussion or response to Plaintiff's argument that these authorities preclude summary judgment as it relates to the Radcliffe report (which is the only thing Defendants addressed below on this claim).

21

Defendants have forfeited (or waived) the argument. *United States v. Dreyer*, 804 F.3d 1266, 1277 (9th Cir. 2015) (en banc) ("[A]n appellee waives any argument it fails to raise in its answering brief."); *Clem v. Lomeli*, 566 F.3d 1177, 1182 (9th Cir. 2009) (same).

## V.  Plaintiff's Unreliable Identification Claim Must Proceed To Trial

### A.  Defendants Cannot Cure Forfeiture of This Issue

Defendants bore the initial burden at summary judgment of showing why they believed that they were entitled to judgment as a matter of law, and on what basis. *Olivier v. Baca*, 913 F.3d 852, 857 (9th Cir. 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). As movants, defendants were required to show "there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Though Plaintiff had pleaded these claims, 13-ER-2927-30, 2934, 2947, and though this Court had ruled that the misidentifications "presented at trial were significantly flawed, and the "officers' presentation procedures were textbook examples of suggestive techniques." *Browning*, 875 F.3d at 467, Defendants said *nothing* about these claims in their motion for summary judgment. *See* 5-ER-823-76.

22

As a result, Defendants could not possibly meet their initial burden under Rule 56. *Celotex,* 477 U.S. at 322-23.

In addition, it is well established that "arguments raised for the first time in a reply brief are waived." *Graves v. Arpaio,* 623 F.3d 1043, 1048 (9th Cir. 2010); *see also U.S. ex. rel. Meyer v. Horizon Health Corp.,* 565 F.3d 1195, 1199 n. 1 (9th Cir. 2009) (rejecting a "new theory, first raised in [the] reply brief," as waived).

Plaintiff accordingly had no obligation to address that issue and did not substantively lay out the legal standards or *all* of the material facts relevant to that claim that would preclude summary judgment. Instead, though Plaintiff cited some general standards, 2-ER-172, and had mentioned the misidentifications as relevant background, Plaintiff emphasized Defendants' waiver. 2-ER-129 n.1, 2-ER-172-73.

Tellingly, Defendants offer no explanation for their forfeiture; they simply point out the issue was raised *in reply* below. AB31. Of course, that was insufficient then, and remains insufficient now. *Graves*, 623 F.3d at 1048; *Meyer,* 565 F.3d at 1199 n. 1.

The forfeiture is even more concerning given the ghostwriting below. Forfeiture cannot be excused where an issue that has "not been

fully explored," *Eberle v. City of Anaheim*, 901 F.2d 814, 818 (9th Cir. 1990). This important claim was not fully explored because Defendants did not raise it in their motion. 5-ER-823-76.

### B. Defendants' Belated Arguments Construe the (Partial) Record against Plaintiff

Without even trying to address their forfeiture (ironically forfeiting the chance to do so), Defendants nest their discussion of the identification issues within the broader discussion of Plaintiff's *Brady* claim. AB45-58.

Obscured by Defendants' citation to inapposite quotes that mostly do not involve the operative legal question, the constitutional inquiry is well established. At this juncture, the questions are two-fold: (1) whether a reasonable jury could find there were suggestive procedures, and (2) whether a reasonable jury could find the identification evidence unreliable. *See Neil v. Biggers,* 409 U.S. 188, 199 (1972); *Manson v. Braithwaite*, 432 U.S. 98, 113 (1977).

Defendants do not even cite, much less address, the question of what constitutes suggestiveness, and they do not address the fact this Court has already acknowledged the "officers' presentation procedures were textbook examples of suggestive techniques." *Browning*, 875 F.3d at 468 (citing *United States v. Wade*, 388 U.S. 218, 228 (1967)). Nor do they

24

address evidence of unreliability, which includes: (1) the fact that they are misidentifications (because Browning is innocent); (2) that two of the identifications were "equivocal at best"; that (3) Coe's identification was the result of "highly suggestive" procedures that made "any resulting identification of little evidentiary value," *id.* (citing *Stovall v. Denno*, 388 U.S. 293, 302 (1967)); (4) that the procedures were conducted simultaneously (undermining reliability of each of them); (5) that Josy Elsen's "identification" was only made after repeated procedures, *all of* which were tainted by the first; and (6) Elsen and Coe had very limited opportunity to view the perpetrator (and were likely distracted). In addition, Plaintiff submitted social science evidence that would further enable a reasonable jury to find unreliability, 5-ER-768-69, 771-75, 780-81, 786-92, and that is properly part of the inquiry. *United States v. Beck*, 418 F.3d 1008, 1012 n.2 (9th Cir. 2005).[2]

At best, Defendants' arguments (though forfeited), simply ask the Court to weigh the evidence, and to weigh the evidence against Plaintiff

---

[2] Given the extensive authorities cited here, and in the Opening Brief, OB52-56, Defendants' references to qualified immunity, which were forfeited below and raised in such a cursory fashion here that they require no response, fail on the merits, too.

25

at summary judgment. They must accept Plaintiff's innocence—and that he was *misidentified* but they refuse. That refusal is forbidden and precludes summary judgment. The claim should proceed to trial.

## VI. Plaintiff's Fourth Amendment And Analogous State Constitutional Claim Must Proceed To Trial

Defendants' arguments about the Fourth Amendment, which overlap with the Nevada constitutional claim, are easily dispatched.

Defendants' main argument is that probable cause existed because of certain evidence in the case. But there exist material disputes of fact about nearly all of this evidence. Defendants, yet again, have refused to construe the record in the light most favorable to Plaintiff.

For example, Defendants point to three things related to the Wolfes—their accusations that Browning admitted the crime, Browning's location, and that Vanessa directed the officers to the murder weapon and a hat. AB50. But, Plaintiff's interpretation of these events is the opposite: the highly improbable story of someone confessing to a murder, giving people the proceeds, directing them to the murder weapon, and then just sitting there waiting to be arrested, was obviously suspect. OB9-10, 62-63. The entire course of conduct, Plaintiff contends, pointed more at *the Wolfes* than it did to Browning. *See* OB10. Material disputes

of fact preclude summary judgment here. Defendants also point to the misidentifications of Coe and Woods, AB50. But, on Plaintiff's facts, these were unreliable and did not give rise to probable cause due to the manner in which they were presented. OB7, 13-14, 20-22, 54-55, 63. Again, Defendants' argument relies on construing evidence *against* Plaintiff.

Defendants also point to other issues, the import of which is well and truly disputed, including what to make of the fingerprints and Browning's escape. AB51. The problem with these arguments, as above, is Defendants' preferred interpretation is for a jury to weigh at trial, not a court to determine at summary judgment. *See* OB16 & n.1.

Three other legal issues warrant brief mention. First, the fact that there was probable cause to arrest Plaintiff for escape (which is undisputed) does not preclude claims on the absence of probable cause for murder. The Supreme Court recently made this clear in *Chiaverini v. City of Napoleon, Ohio*, which held that probable cause on a legitimate charge does not preclude a Fourth Amendment claim based on a bogus charge for which there is no probable cause. 602 U.S. 556 (2024).

Second, Defendants suggest that malice must be proven on the Fourth Amendment claim. AB51. Defendants misunderstand the nature

27

of the claim. Although federal courts used to draw from state common law, that practice now inappropriate given that, as in *Chiaverini*, the Supreme Court has made clear that the Fourth Amendment supplies the basis for a post-process claim resembling malicious prosecution under the U.S. Constitution. *Thompson v. Clark*, 142 S. Ct. 1332 (2022); *Manuel v. City of Joliet*, 580 U.S. 357, 369 (2017). As a result, looking to state law and importing "malice" is no longer appropriate because the "Fourth Amendment inquiry is one of "objective reasonableness" under the circumstances, and subjective concepts like 'malice' and 'sadism' have no proper place in that inquiry." *Graham v. Connor*, 490 U.S. 386, 399 (1989); *see also Whren v. United States*, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.").[3]

Third, Defendants make some vague allusions to prosecutorial independence. AB49-50. While Plaintiff believes this doctrine is contrary

---

[3] Even if malice were required, it is a jury question, *Estate of Tucker ex rel. Tucker v. Interscope Records*, Inc., 515 F.3d 1019, 1030 (9th Cir. 2008) ("Malice is usually a question of fact for the jury to determine."), and *mens rea* is not a suitable basis for summary judgment. *Vucinich v. Paine, Webber, Jackson & Curtis, Inc.*, 739 F.2d 1434, 1436 (9th Cir. 1984).

28

to Supreme Court precedent regarding causation,[4] this Court need not reach the issue to remand because (1) probable cause cannot be based on fabricated evidence, *Manuel*, 580 U.S. at 369 n.8, *Milstein v. Cooley*, 257 F.3d 1004, 1011 (9th Cir. 2001), or unreliable identifications, *Cameron v. Brown*, 721 F. App'x 612, 613-14 (9th Cir. 2017); and (2) because the doctrine of prosecutorial independence does not apply where police have fabricated evidence that was provided to the prosecutor. *See Caldwell*, 889 F.3d at 1116 ("[I]f a plaintiff establishes that officers either presented false evidence to or withheld crucial information from the prosecutor, the plaintiff overcomes the presumption of prosecutorial independence and

---

[4] This doctrine treats prosecutorial decision-making as a superseding cause that breaks the chain of liability for a police officer even though the use of the fabricated evidence was foreseeable. The Supreme Court has rejected this sort of "no causation" rationale; both recently in *Chiaverini* by recognizing causation can still be found despite a legitimate prosecution and decades ago in *Malley v. Briggs*, 475 U.S. 335, 345 n.7 (1986), by permitting police offices to be liable even following prosecutor's acts. A defendant is "responsible for the natural consequences of [their] actions." *Monroe v. Pape*, 365 U.S. 167, 189 (1961), and the "touchstone of proximate cause in a § 1983 action is foreseeability," *Sabbe v. Washington Cnty. Bd. of Commissioners*, 84 F.4th 807, 817 (9th Cir. 2023). As such, where a prosecutor's "independent" decision to charge is foreseeable it "cannot be deemed a superseding cause of the harm." *Staub v. Proctor Hosp.*, 562 U.S. 411, 420 (2011).

29

the analysis reverts back to a normal causation question."). Prosecutorial independence is irrelevant here.

## VII. Plaintiff's Failure To Intervene Claim Must Proceed To Trial

Defendants offer three arguments, all of which fail.

First, Defendants suggest Plaintiff cannot proceed on this claim because a jury could not find a constitutional violation. They are mistaken. Defendants themselves forfeited challenge to Plaintiff's unduly suggestive identification claim and fabrication claims.

Second, Defendants claim that a failure to intervene is a "subpart" of a Fourth Amendment excessive force claim. AB51. Again, they are mistaken. This Court's decision in *Cunningham v. Gates*, as cited by Defendants themselves, provides that "police officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." 229 F.3d 1271, 1289 (9th Cir. 2003). Defendant's interpretation is incompatible with *Cunningham*'s use of the phrase "constitutional rights" rather than saying "Fourth Amendment right to excessive force alone." In addition, and as explained in the Opening Brief, myriad authorities recognize the duty to intervene beyond the excessive

30

force context. *See* OB64-65 (collecting cases). The argument and request for immunity fail.

Third, Defendants argue that they cannot be liable for failing to intervene because they did nothing wrong, that probable cause existed, and that they were free to just simply let the criminal process play out. AB53. Defendants are fortunately mistaken about the law—the question is about their opportunity to intervene, which clearly they had given the record in the case. At core, the argument fails because it is premised on construing the record against Plaintiff rather than accepting things like Browning's innocence, the unreliable nature of the show-ups, and the obvious absurdity of the Wolfes' claims that they elected not to stop. The argument is perhaps for a jury at trial, not summary adjudication.

## VIII. Plaintiff's Federal Conspiracy Claim Must Proceed To Trial

There are scores of cases in this Circuit recognizing conspiracy claims between agents employed by the same municipal entity. *See, e.g., Cameron v. Craig*, 713 F.3d 1012, 1023 (9th Cir. 2013); *Baldwin v. Placer Cnty.*, 418 F.3d 966, 970-71 (9th Cir. 2005); *Gilbrook v. City of Westminster*, 177 F.3d 839, 857 (9th Cir. 1999); *Harris v. Roderick*, 126 F.3d 1189, 1195-96 (9th Cir. 1997); *Dirks v. Martinez*, 414 F. App'x 961,

963 (9th Cir. 2011). This law belies any claim that it was not clearly established police could not conspire with one another.

In the Opening Brief, Plaintiff also explained why the intracorporate conspiracy doctrine should not apply in § 1983 cases. OB67-69. Simply put, a fundamental tenet of that doctrine derived from 42 U.S.C. § 1985 *conspiracy* cases and antitrust is that the actions of the employee are imputed to the employer and so the employees cannot, therefore, conspire because they are basically one and the same. That does not does not apply in this context. *Compare Ziglar v. Abbasi,* 582 U.S. 120, 153 (2017) (recognizing antitrust law treating "as a practical and legal matter" employees' acts as "two agents of the same entity" unable to make an agreement because "their acts are attributed to their principal"), *with Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978) ("[W]e conclude that a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.").

Qualified immunity is about notice. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002); *Deorle v. Rutherford*, 272 F.3d 1272, 1275 (9th Cir. 2001).

32

Nothing about *Ziglar* disrupted that notice because, among other things, it is obvious that officers should not be permitted to conspire to violate someone's rights, because of this Court's established law, and because the Supreme Court has never implied or hinted that officers' liability will be imputed to their employers making them, essentially, the same for purposes of liability. The Supreme Court has repeatedly said the opposite.

Two panels of this Court have, in unpublished decisions, reached a different result. *Long v. Weeks*, 2024 WL 1672258, at *1 (9th Cir. Apr. 18, 2024); *Lobato v. LVMPD*, 2023 WL 6620306, *2 (9th Cir. 2023). Respectfully, these decisions are unpersuasive for the reasons explained in the Opening Brief (and that Defendants do not meaningfully grapple with in the Answering Brief). Reversal is warranted on this claim.

## IX. Plaintiff's *Monell* Claim Must Proceed To Trial

Defendants argue in conclusory fashion that Plaintiff provided no evidence in support of her *Monell* claim. AB55-56. That is not true and again construes the evidence in their favor. Plaintiff discussed the extensive evidence below. 2-ER-191-95. Specifically, a reasonable jury could find that: LVMPD had no meaningful policies, where such policies

33

were obviously required (such as on disclosure of *Brady* evidence and identification procedures); LVMPD failed to institute adequate procedural safeguard to ensure preservation and production of material information that must be disclosed by the police; LVMPD's utter failure to provide any training on *Brady* obligations was constitutionally deficient; and LVMPD ratified the unconstitutional actions of the Defendant Officers. *Id.* The district court did not address any of this, as Defendants ignored it in their ghostwritten order. Defendants continue in that erroneous path with their Answering Brief. Repeating the error does not make it correct.

Plaintiff's claim against LVMPD should be tried.

## X.    Plaintiff's Other State Law Claims Must Proceed To Trial

Defendants do not address Plaintiff's state-law due process fabrication of evidence claim rooted in the Nevada Constitution. *Compare* OB70 *with* AB56-59. This claim should proceed to trial for the same reasons as the federal fabrication of evidence claim.

With respect to the abuse of process and intentional infliction of emotional distress, Defendants ignore the record evidence. A reasonable jury could find that Defendants abused the judicial process by framing

34

Browning for a murder he did not commit, intentionally suppressing exculpatory evidence and fabricating evidence. A reasonable jury could also find that committing such acts intentionally inflicted emotional distress on Browning. These claims, amply discussed in the Opening Brief, should be remanded for trial.

## CONCLUSION

The district court's judgment against Plaintiff should be reversed and the case remanded to a different judicial officer for trial.

Respectfully submitted,

s/ David B. Owens
*Counsel for Plaintiff-Appellant*

David B. Owens
CIVIL RIGHTS AND JUSTICE CLINIC
UNIVERSITY OF WASHINGTON LAW SCHOOL
William H. Gates Hall, Ste. 265
P.O. Box 85110
Seattle, WA 98145
O: 312-243-5900
david@loevy.com
*Counsel for Plaintiff-Appellant*

Elizabeth Wang
LOEVY & LOEVY
2060 Broadway, Ste. 460
Boulder, CO 80302
O: 720-328-5642
elizabethw@loevy.com

## CERTIFICATE OF COMPLIANCE

I, David B. Owens, counsel for Plaintiff-Appellant, hereby certify that this brief contains 6,804 words, including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief complied with the word limit of Cir. R. 32-1.

s/ David B. Owens
*Counsel for Plaintiff-Appellant*

## STATEMENT OF RELATED CASES

The undersigned attorney states the following: I am unaware of any related cases currently pending in this court.

s/ David B. Owens
*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2024, I electronically filed the foregoing with the Clerk of Court using ACMS, which will electronically send notice to all counsel of record.

s/ David B. Owens
*Counsel for Plaintiff-Appellant*

36